# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE LUNSFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09–cv–575–MJR–SCW |
| | ) |
| SERGEANT JEFF BRIDDICK, DEPUTY TONY COURT, SERGEANT ROBERT RICHERT, | ) ) ) |
| | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b)**, and **LOCAL RULE 72.1(a)** for a Report and Recommendation on the issue of whether Defendants Jeff Briddick and Tony Court used excessive force on Plaintiff and whether Defendant Robert Richert was deliberately indifferent to Plaintiff's medical needs. It is **RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Doc. 45) and that the Court **ADOPT** the following findings of fact and conclusions of law.

## II. Factual Findings

This matter stems from an incident that occurred while Plaintiff was a detainee at the Madison County Jail. On December 1, 2008, Plaintiff, at the time of the initial events in his Complaint, was housed in Cell 3 in Cellblock E-North (Doc. 45 Ex. A at p. 11; Ex. B). While housed in the cell, Lunsford felt the bunk he was lying on detach from the wall and he fell to the floor hitting his head and

back (Doc. 47 Ex. A at pp. 37, 40). Upon trying to stand up, Lunsford felt a sharp pain in his back, causing him to again fall and this time hit his head on the cell toilet (*Id.* at pp. 40-41). At approximately 7:17 p.m., the panic alarm in Cellblock E-North was activated and Jail Officer Gus Navarrette and Defendant Richert responded to the cellblock (Doc. 45 Ex. A at p. 17; Ex. D). Upon reaching Plaintiff's cell, Navarrette noted that Plaintiff was lying face down and, in response, Richert locked down the cellblock for officer safety (Doc. 45 Ex. C at pp. 11-12; Ex. D). After the lockdown was initiated, both officers entered Plaintiff's cell. Navarrette asked Plaintiff what was wrong and upon receiving no response from Plaintiff, Richert radioed for assistance (Doc. 45 Ex. C at pp. 12-14; Ex. D). Defendant Richert contacted medical staff and then the consol operator, who in turn contacted Edwardsville Fire Department EMS (Doc. 45 Ex. D). Plaintiff states that he recalled Richert saying his name and alleges that he woke up to Richert stepping on his toes and fingers, but does not recall anything else or how long he was in the cell before Richert arrived or how long Richert remained in the cell because the events were "a blur" (Doc. 47 Ex. A at pp. 19-20).

At 7:45 p.m. EMS were dispatched to the Madison County Jail and arrived at 7:46 p.m. EMS arrived at Plaintiff's cell at 7:50 p.m. and by 8:18 p.m. were enroute to Gateway Regional Medical Center where they arrived at 8:45 p.m. (Doc. 45 Ex. L). Plaintiff recalls being strapped to a gurney in the hallway of the jail although is unclear of the amount of time that had passed. He also recalls being in the ambulance on the highway with Defendant Court (Doc. 47 Ex. A at p. 24).

Once at the hospital, Plaintiff states that he saw Defendant Briddick come in the hospital and talk with a nurse and then asked Plaintiff if he had gotten his period (Doc. 47 Ex. A at pp. 30-31). Plaintiff met with two nurses, a male and a female, and he told them that he was experiencing pain in his back, that there was a burning sensation in his shoulders, his legs had a tingling, burning sensation, and that he had a pulsing pain in his head (*Id.* at pp. 31-32; Doc. 45 Ex. G at p. 12). The nurses

completed tests and then Plaintiff met with the doctor who also asked him about his pain (*Id.* at p. 32). Plaintiff was treated in the emergency room by Dr. Debabrata Ray who took his medical history and performed a physical examination (Doc. 45 Ex. H at pp. 9, 12-13). Dr. Ray stated that several tests were ordered including: blood tests, EKG, urine test, x-rays of the back and chest, and CT of the head (*Id.* at p. 15). The EKG and CT were normal and the x-rays showed no fractures (*Id.* at pp. 16-17). The blood test was also normal. (*Id.* at p. 19-20). Based on the physical exam and test results, Dr. Ray diagnosed Plaintiff with "maliase" which he described as generalized body ache and, though he did not prescribe any medications, he indicated that Plaintiff should follow up with a physician at the County Jail (*Id.* at p. 21).

After Plaintiff's visit with the doctor was completed, Defendant Court informed Plaintiff that he was being discharged. From here, Plaintiff's and Defendants' version of events wildly diverge. Defendants state that upon Defendant Court instructing Plaintiff that it was time to leave the hospital, Plaintiff refused, informing Defendant Court that he was paralyzed (Doc. 45 Ex. G at p. 49). At this point, Defendants Court and Briddick allege that they treated Plaintiff as a passive resister, picking him up by his armpits and escorting him to the squad car (*Id.* at pp. 49-51; Ex. F). Defendant Court allegedly placed his left hand under Plaintiff's right armpit while placing his right hand on Plaintiff's arm. Defendant Briddick allegedly did the same on Plaintiff's opposite side and they carried Plaintiff to the squad car and placed him in the backseat (Doc. 45 Ex. G at p. 68). Both officers denied that they used excessive force on Plaintiff or grab him around the neck (*Id.* at pp. 65, 68; Ex. I at p. 15).

Plaintiff, on the other hand, tells a very different story. Plaintiff alleges that when Defendant Briddick and Defendant Court informed him that he was being discharged, Plaintiff asked "can I have a minute. My back still hurts." (Doc. 47 Ex. A at pp. 46-47). According to Plaintiff, Briddick then indicated that they didn't have time to wait and "snatched him up out of the bed" in a

headlock, instructing Court to grab him also (*Id.*). Plaintiff describe the action as picking him up by the neck and taking him out of the bed, securing Plaintiff's hands behind his back (*Id.* at p. 47). Plaintiff indicated that hospital staff saw the incident (*Id.* at pp. 47-48). Plaintiff stated that Defendant Court had a hold of Plaintiff by one arm and a leg, while Defendant Briddick had a hold of Plaintiff's neck and an arm and the drug him through the lobby and into the parking lot to the squad car (*Id.* at p. 49). Once they reached the squad car, Plaintiff stated in his deposition that Defendants threw him into the squad car (*Id.* at p. 52).

Upon arriving back at the jail, Plaintiff walked into the jail and was placed either in an attorney interview booth or Segregation Unit #4.[1] Plaintiff maintains that he never saw medical staff at the jail even though he repeatedly asked guards, from December 1, 2008 until December 17, 2008, to be seen by staff (Doc. 47 Ex. A at p. 67). Defendant Court stated that Plaintiff requested a grievance form upon his return and that he someone Plaintiff a pencil and paper (Doc. 45 Ex. G at pp. 53-54). According to Defendants, Plaintiff, upon his return, was housed in Segregation Unit #4 per policy in order to be monitored by medical personnel before being returned to general population (Doc. 45 Ex. E at p. 17). Plaintiff was housed in Segregation Unit #4 on December 2, 2008 from 5:43 a.m. until 1:10 p.m. when he was returned to Cellblock E-North (Doc. 45 Ex. E at p. 39; Ex. B). Plaintiff refused medical staff on December 2, 2008 (Doc. 45 Ex. N).

### III. Conclusions of Law

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[1] Defendant Court's deposition indicated that Plaintiff was placed in an attorney booth (Doc. 45 Ex. G at p. 52). Plaintiff also indicated that he was placed in the attorney booth (Doc. 47 Ex. A at p. 61). However, the jail records indicate, as do Jail Superintendent Captain Donal's deposition, that Plaintiff was located in Segregation Unit #4 on December 2, 2008 (Doc. 45 Ex. B; Ex.

as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted)(citing FED.R.CIV.P. 56(a));** *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005)..** The party seeking summary judgment bears the initial burden of demonstrating - based on the pleadings, affidavits, and/or information obtained via discovery - the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**.

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)).**[2] A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovent's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted)**.

On summary judgment, the Court considers the facts in the light most favorable to the

---

[2] Rule 56 was revised in December 2010. According to the Report of the Judicial Conference Committee on Rules of Practice and Procedure, the revisions "are not intended to change the summary judgment standard or burdens." Judicial Conference Committee on Rules of Practice and Procedure, Report to the Chief Justice of the United States and Member of the Judicial Conference of the United States, 14 (Sept. 2009), available at: http://www.uscourts.gov/uscourts/RulesAndPolices/rules/Reports/Combined_St_Report_Sept_2009.pdf.

non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009)**. The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d at 512.** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

A. **Excessive Force as to Jeff Briddick and Deputy Tony Court**

Plaintiff's Complaint alleges that both Defendants Briddick and Court used excessive force on him in removing Plaintiff from the hospital, by dragging him across the lobby and parking lot, to the awaiting squad car. As Plaintiff was a pretrial detainee at the Madison County Jail and not a sentenced prisoner, his rights were guaranteed by the Fourteenth Amendment. *Lewis v. Downey*, **581 F.3d 467, 473 (7th Cir. 2009);** *Forrest v. Pine*, **620 F.3d 739, 743-44 (7th Cir. 2010) (excessive force against pretrial detainee falls under the Fourteenth Amendment);** *Estate of Moreland v. Dieter*, **395 F.3d 747, 758 (7th Cir. 2005);** *Wilson v. Williams*, **83 F.3d 870, 875 (7th Cir. 1996) ("Between the status of free citizen and convicted prisoner lies the 'pretrial detainee,' protected by the due process clause of the Fourteenth Amendment.").**[3] While Plaintiff's claims are to be analyzed under

---

[3] As noted by the Seventh Circuit in *Lewis*:

Pretrial detainees, by contrast [to sentenced prisoners], have not been convicted or sentenced and thus are not yet "punishable" under the law. *See Bell v. Wolfish*, **441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979) ("[A pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").** This means that pretrial detainees "may not be 'punished' by the state *in any way*." *Wilson*, **83 F.3d at 875 (emphasis added)**. As such, pretrial detainees couch excessive force claims as violations of their Fourteenth Amendment rights to due process, not infringements on the Eighth Amendment's ban on cruel and unusual punishment. *See Brown [v. Budz]*, **398 F.3d [904], 910 [(7th Cir. 2005)];** *Butera v. Cottey*, **285 F.3d 601, 605 (7th Cir. 2002);** *Pardue ex rel. Estate of Cole v. Fromm*, **94 F.3d 254, 259 n. 1 (7th Cir. 1996).**

the Fourteenth Amendment, rather than the Eighth Amendment, the Seventh Circuit has instructed that "pretrial detainees are entitled to *at least* as much protection as the constitution provides convicted prisoners." *Board v. Farnham*, **394 F.3d 469, 477-78 (7th Cir. 2005)**. While the Seventh Circuit has indicated that the Fourteenth Amendment provides a broader protection than the Eighth Amendment, neither the Seventh Circuit nor the Supreme Court has indicated what those protections, beyond those afforded by the Eighth Amendment, would be. *See Lewis*, **581 F.3d at 474-75 (While "the exact contours of any additional safeguards remain undefined", it is clear that "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment.");** *Forrest*, **620 F.3d at 744 ("The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment.").** Moreover, the Seventh Circuit, recently, in *Forrest* has held that absent any indication by the plaintiff as to what further rights he would be entitled to under the Fourteenth Amendment, the Court would borrow the Eighth Amendment standard for excessive force claims. *Forrest*, **620 F.3d at 744;** *See also Lewis*, **581 F.3d at 475 (The court refused to consider, absent the parties raising the issue, "any safeguards the Fourteenth Amendment provides beyond those it shares with the Eighth Amendment.").** Here, the Court finds that, like in *Forrest*, the parties have not indicated that they should be entitled to a higher standard, or what that standard, if applicable, might be.[4] Thus, for the purposes of this matter, the Court will adopt the Eighth

---

[4] The Court notes that both Plaintiff and Defendants state that the Seventh Circuit has recognized that the Eighth Amendment protections are insufficient for a pre-trial detainee and that the standards for excessive force in a pretrial setting should be higher than those provided by the Eighth Amendment. However, the standards the parties provide are from Seventh Circuit decisions issued prior to the Court's ruling in *Forrest*. Further, those standards, according to the parties, track with Fourth Amendment protections. However, the Seventh Circuit has specifically rejected the theory that Fourth Amendment rights apply to pretrial detainees, as a pretrial detainee is "outside the temporal bounds of the Fourth Amendment." *See Forrest*, **620 F.3d at 743 (citing** *Wilkins v. May*, **872 F.2d 190, 192-93 (7th Cir. 1989)).**

Amendment standard for excessive force claims to analyze Plaintiff's claims.

The Eighth Amendment provides that "the unnecessary and wanton infliction of pain on a prisoner violates his rights." *Forrest*, **620 F.3d at 744 (citations and internal quotations omitted);** *see also Whitley v. Albers*, **475 U.S. 312, 319, 106 S.Ct. 1078, 90 L.Ed. 2d 251 (1986).** However, not every touch by an official constitutes excessive force. *Lewis*, **581 F.3d at 475 (quoting** *Hudson v. McMillian*, **503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).** Force applied in "a good-faith effort to maintain or restore discipline' does not rise to the level of being unnecessary and wanton." *Forrest*, **620 F.3d at 744 (quoting** *Hudson*, **503 U.S. at 7)**. Only that force which is intended by the officer "maliciously and sadistically" to cause harm rises to the Eighth Amendment Standard. *Id*.

As to Plaintiff's excessive force claim, Defendants Court and Briddick argue that they are entitled to summary judgment because there is no evidence that Court or Briddick struck Plaintiff, placed him in a headlock, or in any way used excessive force. However, the Court finds that there are issues of material fact as to Plaintiff's excessive force claim. Plaintiff and Defendants provide vastly differing version of events as to how Defendants removed Plaintiff from his hospital bed to the squad car. Defendants Court and Briddick testified in their deposition that they treated Plaintiff as a passive resister because he refused to leave the hospital and carried him by his armpits to the squad car. They state that they never grabbed him by the neck or dragged him and that any force was used in a reasonable manner in order to get a passively resisting Plaintiff to the squad car. However, Plaintiff's deposition testimony indicated that Plaintiff simply asked for an extra few minutes to prepare to leave the hospital due to his pain levels and that Briddick, in turn, grabbed Plaintiff by the neck and "snatched him" from the bed. According to Plaintiff's version of events, Defendant Briddick grabbed him by his neck and arm, while Defendant Court had him by his opposite arm and leg and both drug Plaintiff

through the hospital and across the parking lot before throwing him into the squad car.

Clearly, there are issues of material fact as to the events that occurred between Defendants and Plaintiff at the hospital. Both sides present entirely different stories as to Defendants' interactions with Plaintiff while removing him from the hospital. Defendants make much of the fact that Plaintiff testified that hospital staff witnessed Defendants Court and Briddick drag him from the hospital and that Dr. Ray, Plaintiff's treating physician, did not observe jail employees grab Plaintiff. However, Dr. Ray's testimony was that he did not recall seeing Plaintiff leave the hospital and had no independent recollection of seeing a jail employees grab Plaintiff (Doc. 45 Ex. H at pp. 23-24). Dr. Ray's testimony does not negate the conflicting version of events presented by both sides. Defendants also argue that Plaintiff's deposition testimony has no bearing on the case and does not establish a genuine issue of fact (Doc. 48 at p.3). However, the Court notes that Plaintiff's deposition testimony clearly discusses the events that took place in this case and presents several issue of material fact as to Defendants' treatment of Plaintiff. Thus, the undersigned **FINDS** that issues of material fact exist as to whether Defendants Court and Briddick used excessive force against Plaintiff. Thus, the undersigned **RECOMMENDS** that the Court **FINDS** that Defendants Court and Briddick are not entitled to summary judgment on Plaintiff's claims of excessive force.

B.  **Deliberate Indifference as to Sergeant Robert Richert**

Plaintiff's Complaint also alleges that Sergeant Robert Richert was deliberately indifferent to his serious medical needs by allowing Plaintiff to lay unconscious in his cell for over an hour before requesting medical attention. Plaintiff also alleges that Defendant Richert was deliberately indifferent upon Plaintiff's return from the hospital because he confiscated his grievance form, locked him an attorney holding room for an extended period of time, and refused his request for medical care.

As Plaintiff is a pretrial detainee, he is protected by the Fourteenth Amendment's Due

Process Clause which also provides a pretrial detainee with a right to adequate medical treatment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies to convicted individuals. *See Williams v. Rodriguez*, **509 F.3d 392, 401 (7th Cir. 2007).** Prison officials cannot punish pretrial detainees; at the same time they are obligated to keep detainees safe and to provide adequate medical care under the Fourteenth Amendment. *Brownell v. Figel*, **950 F.2d 1285 (7th Cir. 1991);** *Sullivan v. Bornemann*, **384 F.3d 372, 377 (7th Cir. 2004)**. While the applicable Amendments are different, the Seventh Circuit as noted that the applicable standards of liability, either under the Fourteenth or Eighth Amendment, are the same. *Thomas v. Cook County Sheriff's Dept.*, **588 F.3d 445, 452 n. 1 (7th Cir. 2009);** *Williams*, **509 F.3d at 401.** For purposes of the Fourteenth Amendment, with respect to medical decisions made by prison officials, Courts apply the "deliberate indifference" standard associated with the Eighth Amendment. *Id*.

The deliberate indifference standard has both an objective and a subjective component. *Walker v. Benjamin*, **293 F.3d 1030, 1037 (7th Cir. 2002)**. In order to prevail on a claim of deliberate indifference, the objective element requires that a plaintiff must show that his condition was "objectively, sufficiently serious" and the subjective element requires that the "officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).** The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, **546 F.3d 516, 522-23 (7th Cir. 2008) (quoting** *Guteirrez v. Peters*, **111 F.3d 1364, 1373 (7th Cir. 1997)).** *See also Foelker v. Outagamie County*, **394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even**

**a lay person would easily recognize the necessity for a doctor's attention.")**.

Second, the subjective element requires that a detainee show that officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of [detainees] constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, **429 U.S. 97, 104, 97 S.Ct. 285 (1976) (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976))**. Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, **414 F.3d at 653.** Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Johnson v. Doughty,* **433 F.3d 1001, 1013 (7th Cir. 2006);** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987)**. Mere dissatisfaction or disagreement with the course of treatment is generally insufficient, and the treatment decision of a medical professional is given deference, unless "no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter*, **541 F.3d 688, 697-98 (7th Cir. 2008)**. "Whether a[n]...official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a[n]...official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted)**. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, **546 F.3d at 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000);** *Greeno*, **414 F.3d at 653.).** "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010) (quoting** *Farmer*,

**511 U.S. at 843).**

As to Plaintiff's deliberate indifference claims, Plaintiff has presented two incidents of alleged deliberate indifference. Plaintiff first alleges in his Complaint that Defendant Richert was deliberately indifferent to Plaintiff's medical needs by allowing him to lay unconscious for over an hour after Plaintiff's initial fall. Plaintiff also alleges that after he returned from the hospital that he was denied an opportunity to file a grievance, held in an attorney holding room for an unknown amount of time, and denied requests for medical care.

As to Plaintiff's claims that Defendant Richert was deliberately indifferent to Plaintiff's serious medical needs by allowing Plaintiff to lie in his cell for over an hour, Defendants point to evidence that Plaintiff did not in fact lie in his cell nor did Richert ignore Plaintiff's injuries. Defendants have pointed to testimony that Richert and Navarrette promptly reported to Plaintiff's cell once they heard the panic alarm activated. Further, jail logs and reports indicate that both Navarrette and Richert responded to Plaintiff's cell only three (3) minutes after the alarms were activated (Doc. 45 Ex. K). According to the incident report, Richert and Navarrette entered the cell and upon finding Plaintiff unresponsive, immediately radioed medical staff and directed that an ambulance be dispatched (Doc. 45 Ex. D). The Edwardsville Fire Department reports show that EMS were dispatched at 7:45 p.m. and arrived at the Plaintiff's cell within five minutes (Doc. 45 Ex. L). Plaintiff has offered little evidence to rebut Defendant's version of events. While Plaintiff stated in his deposition that he remembered Richert walking into his cell and being placed on a gurney at some point, he does not recall how long he was in the cell before Richert arrived or how long he waited for the ambulance to arrive. Plaintiff admits that much of the time is "a blur" due to him being unconscious.

Here, the undisputed evidence clearly shows that Richert was aware of Plaintiff's serious medical needs and responded promptly to them. All the evidence shows that Richert responded

promptly to Plaintiff's cell and upon finding him unconscious promptly radioed medical staff and radioed to have a call placed to EMS at the Edwardsville Fire Department. Plaintiff has not disputed this version of events, nor does he dispute in his Response that Defendant Richert was not deliberately indifferent to his serious medical needs. Instead, Plaintiff merely states that Richert wants his version of events credited and that material facts exist. However, Plaintiff does not argue how the evidence before the Court indicates that Richert was deliberately indifferent (spending his entire Responsive pleading arguing that there are material facts in dispute as to his excessive force claim), nor has he provided any evidence which would create a question of fact to survive summary judgment. Thus, the undersigned **FINDS** that there is no evidence that Defendant Richert was deliberately indifferent to Plaintiff's serious medical needs during his initial interaction with Plaintiff in his cell. Accordingly, the undersigned **RECOMMENDS** that Richert be **GRANTED** summary judgment on this claim.

Defendant Richert also maintains that he was not deliberately indifferent to Plaintiff's serious medical needs once Plaintiff returned from the hospital. Plaintiff's Complaint alleges that Defendant Richert was deliberately indifferent by confiscating a grievance form, confining him to an ill-equipped cell for two or more days, and refusing to provide him with medical attention. Defendant Richert maintains that he is entitled to summary judgment because he did not prevent Plaintiff from filing a grievance and because he was only held in the Segregation Unit #4 for a short time per the policy of the Madison County Jail. Defendant also maintains that Plaintiff refused to be seen by medical staff. The Court first notes that Plaintiff utterly fails to even discuss the allegations regarding the confiscation of his grievance form and being placed in an ill-equipped cell. His facts section of his Response only discusses being refused medical treatment and does not discuss any issues with grievances or his cell. Thus, the undersigned **RECOMMENDS** that Richert be **GRANTED** summary

judgment on these issues.[5]  Moreover, as to the alleged refusal to allow Plaintiff access to the medical staff, there is no evidence that Defendant Richert was any way involved in that refusal.  Plaintiff has not alleged that Defendant Richert personally refused to provide him with medical care upon his return to Madison County Jail.  While Plaintiff testified in his deposition that he asked every officer that came past his cell to place him on the emergency list to see a doctor or nurse, he does not testify nor has he offered any evidence to suggest that Defendant Richert was one of those guards.[6]  Plaintiff has even failed to provide evidence that Richert was even a guard in the Segregation Unit #4 where Plaintiff was housed.  Thus, the undersigned **FINDS** that Defendant Richert is also entitled to summary judgment on this issue as well.

### IV.  Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Defendant Richert is entitled summary judgment in Plaintiff's claims of deliberate indifference but that there are issues of material fact as to Plaintiff's claims of excessive force as to Defendants Briddick and Court.

---

[5] Even if Plaintiff had raised the issues regarding his grievance or cell quality in his Response, Defendant Richert would still have been entitled to summary judgment because Plaintiff has not demonstrated a claim for deliberate indifference on these issues.  He has provided no evidence that either the confiscation of his grievance or his alleged lengthy stay in an attorney booth or segregation cell constitutes a serious medical need.  Further, Defendant Richert has offered evidence, which Plaintiff has not disputed, that someone provided Plaintiff with a pencil and paper upon request for a grievance form (Defendant has offered evidence that a detainee is allowed to file grievances by simply writing them out on paper and forwarding them to the superintendent) and that he was held in Segregation Unit #4 cell from 5:43 a.m. to 1:10 p.m. on December 2, 2008 per jail policy in order to be observed by medical staff.  Thus, there is no evidence that Plaintiff suffered from a serious medical need with his grievance or due to his stay in the segregation unit, nor has Plaintiff shown that Richert was deliberately indifferent to any need related to those issues.

[6] The Court further notes that Plaintiff has testified that the guards he did ask told him that they would let the medical staff know of his request or that the medical staff had to call them.  He does not testify that the guards, in any way, refused to allow him to see medical personnel or were in any way deliberately indifferent by their responses.

Thus, the undersigned **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (Doc. 45). Should the Court adopt this Report and Recommendation, the only claim that will remain is Plaintiff's claim of excessive force against Defendants Briddick and Court.

Pursuant to **28 U.S.C. § 636(b)(1)** and **LOCAL RULE 73.1**, the parties shall have fourteen (14) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.

IT IS SO ORDERED.

DATED: January 17, 2012.

*/s/Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge